Beckett v. Kamaratos

C.P. of Lehigh County, no. 93-C-1548.

*Lisa G. Miller* and *Patricia Powers,* for plaintiffs.
*Charles Bruno,* for defendant.

REIBMAN, *J.,* October 30, 1998—Before the court is defendant Andrew Kamaratos' motion for post-trial relief in the nature of a motion for judgment n.o.v. and plaintiffs' opposition thereto.

Richard Beckett, a minor, by his mother and natural guardian, Carol Cichello, and Carol Cichello in her own right, plaintiffs, instituted the within action following injuries Richard suffered while trespassing on the business premises of defendants Andrew Kamaratos and Emmanuel Gerapetritis known as the Allentown Diner. During July 1991, defendant Imperial Excavating Company was performing substantial renovations on the vacant diner which included removing the existing kitchen and exposing the entire rear portion of the diner. On July 16, 1991, Richard, along with two of his friends, entered the exposed rear portion of the diner to explore its contents. Upon entering the building, Richard proceeded to the basement where he found a bottle of duplicating fluid marked "flammable" and took it to a grassy area directly behind the diner where he subsequently placed a lighter to the fluid which resulted in an explosion causing him serious burns.

Following trial from January 28 through February 6, 1998, a jury found Imperial not to be negligent, Kamaratos 26 percent negligent, Gerapetritis 24 percent negligent, and Richard 50 percent comparatively negligent for plaintiffs' injuries. The jury awarded Richard $10,000 and Carol Cichello $35,000 before any reduction for Richard's comparative negligence.

Based upon these findings, the court entered a molded verdict and subsequently granted plaintiffs' motion for delay damages pursuant to Pa.R.C.P. 238. On February 18, 1998, Kamaratos filed a timely motion for post-trial relief in the nature of a motion for judgment n.o.v.

Judgment n.o.v. may be entered "only if the movant is entitled to judgment as a matter of law and if the evidence presented at trial was such that no two reasonable minds could disagree that the verdict would be in favor of the movant." *Degenhardt v. Dillon Co.,* 543 Pa. 146, 153, 669 A.2d 946, 950 (1996). (citations omitted) In considering such a motion, the court must grant the verdict winner the benefit of every inference which reasonably may be drawn from the evidence and must reject all unfavorable testimony and inferences. *Ludmer v. Nernberg,* 433 Pa. Super. 316, 322, 640 A.2d 939, 942 (1994), *appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995), *cert denied,* 116 S.Ct. 1849 (1996). Judgment n.o.v. may not be used to invade the province of the jury. *Id.* Thus, questions of fact must be resolved by the jury. *Id.* To prevail on a motion for judgment n.o.v., movant must demonstrate that the verdict winner, here the plaintiffs, failed to satisfy any of the elements of their cause of action. *Ludmer,* 433 Pa. Super. at 323-24, 640 A.2d at 943.

Plaintiffs rest their right to recover upon section 339 of the Restatement (Second) of Torts, commonly referred to as the attractive nuisance or child trespasser doctrine. This doctrine provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass; and

"(b) the condition is one which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children; and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it; and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved; and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." Restatement (Second) of Torts §339 (1965); see *Carter by Carter v. United States Steel Corp.*, 390 Pa. Super. 265, 276-77, 568 A.2d 646, 651 (1990), *affirmed in part, reversed in part on other grounds,* 529 Pa. 409, 604 A.2d 1010 (1992), *cert denied sub nom., U.S. Steel v. Carter,* 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 130 (1992) (noting that the Pennsylvania Supreme Court adopted section 339 in *Bartleson v. Glen Alden Coal Co.,* 361 Pa. 519, 64 A.2d 846 (1949)). All five requirements of section 339 must be met before a possessor of land can be held liable. *Goll v. Muscara,* 211 Pa. Super. 93, 97, 235 A.2d 443, 445 (1967).

Kamaratos contends the evidence adduced at trial failed to fulfill the foregoing requirements and, thus, plaintiffs have not established each element of their cause of action. Specifically, Kamaratos asserts plaintiffs failed to establish the existence of an artificial condition, his prior knowledge of child trespassers, that the accident occurred on his property, and that Richard did not appreciate the risk involved.

First, Kamaratos contends there was insufficient evidence to establish Richard's injuries were due to some artificial condition which he created or maintained on the land. He claims that because he did not maintain sporadic fires on his premises he cannot be held accountable under the attractive nuisance doctrine.

In support of his argument, Kamaratos relies upon *Gallagher v. Frederick,* 366 Pa. 450, 77 A.2d 427 (1951), where a minor plaintiff sought recovery for injuries sustained when he was burned by flames from a bonfire which was started by neighborhood children who were playing on defendants' vacant lot. The Supreme Court found, as a matter of law, that plaintiffs had not established the existence of an artificial condition due to the fact that the material kept on defendants' land, which was eventually used to build the bonfire, was not inherently dangerous. However, the artificial condition maintained by Kamaratos was the unsecured diner and its contents. Plaintiffs' engineer and liability expert, Kevin Begley, testified that the diner was not properly secured, and, as such, the diner and its contents were considered dangerous and unsafe by industry customs and standards because kids are attracted to construction sites and construction sites have many hazards associated with them. N.T. vol. III, pp. 452-71. It is the existence of those dangerous conditions which satisfy that aspect of section 339, not the fact that Richard was injured by fire.

Second, Kamaratos contends there was insufficient evidence presented to establish that he knew or had reason to know that children were likely to trespass on his property prior to the accident. He asserts that because he never personally witnessed any children

riding bicycles on his property the jury could not have found him to have had notice that children were likely to trespass.

However, other witnesses testified children were seen frequently riding bicycles on his parking lot which was directly adjacent to the diner. See *Bartleson v. Glen Alden Coal Co.,* 361 Pa. 519, 525, 64 A.2d at 850-51 (1949) (in light of history of children playing games and using pathways within feet of dangerous condition, defendant knew or should have known that children were likely to trespass upon defendant's land); compare, *Whigham v. Pyle,* 224 Pa. Super. 6, 11, 302 A.2d 498, 501 (1973) (undisputed evidence that area of artificial condition was some 150 yards from the area of usual child trespass). Richard testified he and his friends frequently rode their bicycles in the diner lot and he witnessed other neighborhood kids doing so as well. N.T. vol. I, pp. 25-27. Richard's friend, Mike Diehl, also testified he and his friends often rode their bicycles on the diner property. N.T. vol. III, pp. 309-310. Further, Allentown Police Officers Marakovits and Marino testified that at the time of the alleged incident they were familiar with the diner and recall having seen children riding bicycles around the diner. N.T. vol. II, pp. 257, 271. Viewing the testimony in the light most favorable to plaintiffs, it is likely the jury concluded Kamaratos knew or should have known that children were likely to trespass on his property. *Ludmer,* 433 Pa. Super. at 326, 640 A.2d at 944 (it is not the court's role to pass on the credibility of witnesses, to act as the trier of fact or to substitute its judgment for that of the fact-finding jury).

Third, Kamaratos contends there was insufficient evidence presented to establish that the accident occurred "on" his property. Specifically, he argues plaintiffs failed

to establish that the area where Richard ignited the liquid was located on his property. Accordingly, he asserts he should not be held liable for accidents which occur off his property even though the initial trespass onto his property is what led to Richard discovering the flammable substance. Brief of defendant, Andrew Kamaratos, in support of his motion for post-trial relief, p. 17.

Kamaratos has neither cited, nor has the court found, any case law to support his theory that the resulting accident must occur "on" defendant's property. Section 339 and its commentary are silent as to whether the resulting accident must occur "on" defendant's property. Rather, section 339 imposes liability if the accident is caused by an artificial condition upon the land. Thus, the inquiry is not where the injury eventually occurred, but whether the injury was caused "by an artificial condition upon the land." See also, *Bartleson*, 361 Pa. at 525, 64 A.2d at 851 (section 339 poses the question of whether or not a defendant shall be held to reasonably anticipate that a child will bring himself within the orbit of the danger).

Next, Kamaratos contends plaintiffs failed to establish that Richard did not realize or appreciate the risk involved in meddling with fire and flammable materials. Kamaratos argues the jury could not reasonably have concluded that Richard did not appreciate the risk involved because there was testimony that Richard received training in fire safety while enrolled in Boy Scouts, was aware the fluid was marked "flammable," was known to play with fire, and his young companions were aware of the risks associated with playing with fire and warned Richard of risks before he lit the flammable liquid.

On the other hand, plaintiffs assert there was substantial evidence for the jury to conclude that Richard did not fully appreciate his actions, in combination with the flammable material, would lead to his injuries. Richard testified that as a Boy Scout he was never taught how to set fires of this magnitude, but only how to start fires with flint, rocks and sticks. He further testified that he had never seen anything set on fire explode and that he did not read the warnings on the container. Also, the fact that Richard played with fire on prior occasions but was never injured is a factor which a jury may weigh in deciding whether the risk was fully appreciated. See *Bethay v. Philadelphia Housing Authority,* 271 Pa. Super. 366, 375, 413 A.2d 710, 714 (1979) (the fact that children have repeatedly engaged in conduct similar to that which caused the accident without having sustained injury is a factor which a jury may weigh in deciding whether the risk was fully appreciated by the child). Finally, any appreciation by Richard's companions of the risks involved or warnings given to Richard were properly for the jury to weigh as a factor in determining whether Richard fully appreciated the risks involved with his conduct.

The care and caution required of a child is measured by his capacity to see and appreciate danger, and he is held to such measure of discretion as is usual in those of his age and experience. This being necessarily a varying standard, the question is ordinarily one for the jury and not for the court. *Bethay,* 271 Pa. Super. at 375-76, 413 A.2d at 714 (citing *Patterson v. Palley Manufacturing Co.,* 360 Pa. 259, 267, 61 A.2d 861, 865 (1948)). The jury was free to weigh the credibility of each witness and determine whether Richard fully appreciated the risks involved. *Ludmer,* 433 Pa. Super. at 326, 640 A.2d at 944 (where a jury returns a verdict

based on substantial, albeit conflicting evidence, it is conclusive and will not be disturbed).[1]

Finally, Kamaratos contends there was insufficient evidence to establish that his alleged negligence was a substantial factor in bringing about Richard's injuries. His argument is simply that plaintiffs' engineer and liability expert, Kevin Begley, testified that the container of duplicating fluid was not dangerous absent some affirmative action on someone's part such as swallowing, spilling, rubbing or igniting the fluid. Because Richard took the affirmative step of igniting the fluid, Kamaratos contends the jury could not reasonably have concluded that he, Kamaratos, was a substantial factor in bringing about Richard's harm. Accordingly, Kamaratos argues Richard has no one to blame but himself for the injuries he sustained.

At the close of evidence, the court instructed the jury on the applicable law which included a charge on substantial factor. The charge read as follows:

"In order for plaintiffs to recover in this case, the negligent conduct of one or more of the defendants must have been a substantial factor in bringing about the accident, and that is what the law recognizes as legal cause. A substantial factor is an actual real factor,

---

1. Kamaratos also argues that the jury's finding of contributory negligence was inconsistent with their finding Richard did not realize or appreciate the risk involved. His argument attacks the very language contained in the mutually agreed upon verdict slip. Further, his argument is properly preserved in a motion for a molded verdict or new trial not in a motion, as was made here, for judgment n.o.v. *Berman v. Radnor Rolls Inc.,* 374 Pa. Super. 118, 124, 542 A.2d 525, 527 (1988). Moreover, it is not unreasonable that the jury found Richard's failure to read the container's warning label a contributing factor to his injuries and at the same time found he did not fully appreciate the consequences of his actions.

although the result may be unusual or unexpected, but is not an imaginary or fanciful factor, or a factor having no connection, or only an insignificant connection with the accident." N.T. vol. VI, p. 821.

The court further instructed, "[i]f you find that the defendant was negligent and that the defendant's conduct was a substantial factor in bringing about harm to the plaintiff, your verdict must be in favor of the plaintiffs and against the defendants." N.T. vol. VI, p. 828.

Plaintiffs' engineer and liability expert, Kevin Begley, testified that the duplicating fluid, when left unsecured, was dangerous, that the diner and its contents were left unsecured when there was an inexpensive alternative to securing them, and that defendant had breached industry customs and standards in leaving the diner unsecured. Thus, evidence existed for the jury to conclude that defendant's negligence was a real, and not merely insignificant, factor in bringing about Richard's harm. *Ludmer*, 433 Pa. Super. at 322, 640 A.2d at 942 (judgment n.o.v. may be granted only in clear cases, where the facts are such that no two reasonable minds could fail to agree that the verdict was improper). Furthermore, to find Kamaratos' conduct was not a substantial factor because Richard played a role in his accident would obviate the duty imposed under the attractive nuisance doctrine.

"The duty which the rule stated in this section imposes upon the possessor of land is based upon the well-known tendency of children to trespass upon the land of others and the necessity of protecting them, even though trespassers, from their childish lack of attention and judgment. The duty of the possessor, therefore, is only to exercise reasonable care to keep the part of the land upon which he should recognize the likelihood of chil-

dren's trespassing free from those conditions which, though observable by adults, are likely not to be observed by children, or which contain the risks the full extent of which an adult would realize but which are beyond the imperfect realization of children." Restatement (Second) of Torts §339, comment (i) (1965).

Resolving all doubts in favor of plaintiffs as verdict winners and taking care not to invade the province of the jury, Kamaratos has failed to demonstrate plaintiffs did not establish the required elements under the attractive nuisance doctrine or that his conduct was not a substantial factor in bringing about Richard's injuries. See *State Farm Fire and Casualty Co. v. Levine,* 389 Pa. Super. 1, 566 A.2d 318 (1989) (judgment n.o.v. is a drastic act; such a judgment should only be entered where reasonable people could not fail to agree that the verdict was improper). Accordingly, Kamaratos' motion for judgment notwithstanding the verdict is denied.[2]

---

2. Kamaratos also argues he is entitled to a new trial because the court abused its discretion when it denied his request to submit special interrogatories to the jury on the five attractive nuisance elements. However, Kamaratos failed to preserve this issue with a motion for a new trial. *Berman,* 374 Pa. Super. at 124, 542 A.2d at 527.

Even assuming arguendo that Kamaratos could attack the sufficiency of the court's charge as failing to submit special interrogatories, his attack is without merit. "Generally, a trial judge may grant or refuse a request for special [interrogatories] on the basis of whether such would add to the logical and reasonable understanding of the issue." *Fisch's Parking Inc. v. Independence Hall Parking Inc.,* 432 Pa. Super. 263, 274, 638 A.2d 217, 223 (1994). (citations omitted) This decision will not be disturbed absent an abuse of discretion. *Id.* An abuse of discretion exists where there are two possible theories on which the jury may have decided the case, one of which was erroneous. *Century 21 Heritage Realty Inc. v. Bair,* 386 Pa. Super. 373, 378, 563 A.2d 114, 116 (1989).

## ORDER

And now, October 30, 1998, upon consideration of defendant Andrew Kamaratos' motion for post-trial relief in the nature of a motion for judgment n.o.v., plaintiffs' opposition thereto, after oral argument thereon, and for the reasons set forth in the accompanying opinion, it is ordered that said motion is denied.

Here, Kamaratos requested special interrogatories during the second day of deliberations. The request was refused on the basis that the interrogatories would not aid the jury in the logical and reasonable understanding of the issues. Prior to Kamaratos' request, and without objection, the jury had already been re-charged on the elements of the attractive nuisance doctrine and there was no indication that the jury needed any further guidance from the court. N.T. vol. VI, pp. 873-75.